IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| RODNEY DEON BETHANY | § | |
|---|---|---|
| v. | § | CIVIL ACTION NO. 9:08cv104 |
| FRANK REESCANO, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Rodney Bethany, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment pursuant to 28 U.S.C. §636(c). As Defendants, Bethany named Eastham Unit warden Frank Reescano, law librarian Gwendolyn Spurlock, chaplain Vance Drum, and Officer Tangela Bolton.

An evidentiary hearing was conducted on October 23, 2008. At this hearing, Bethany testified that he had been assigned to law library sessions which met at 4 a.m., but that in September of 2007, he and other Muslim inmates celebrated the month of Ramadan, which involves fasting from sun-up to sun-down. Because breakfast for Muslim inmates was scheduled at 4:30 a.m, Bethany says that he had to choose between eating breakfast and going to the law library. He says that he had legal cases which he had filed or was preparing to file, and so he chose the law library, with the result that he was unable to eat until 7:30 p.m.

Bethany testified that he tried to have his law library time changed, but his request was refused. He filed grievances, but was told that the law library times were "not changed for religious reasons."

For relief, Bethany asks that the Court issue a declaratory judgment that the "physical, emotional, and spiritual abuse" which he suffered violated his rights under the First and Eighth Amendments, and that the actions of the warden in failing to assist Bethany and allowing his staff

1

to continue violating his rights was in violation of the First and Eighth Amendment; issue an injunction directing the Defendants to remove all impediments and burdens placed on the Muslim community which are not justifiable penological interests; issue an injunction ordering Officer Tangela Bolton to stop interfering with inmates' rights to practice their religion; award compensatory damages of $40,000.00 jointly and severally against Spurlock, Drum, and Bolton for physical, spiritual and emotional injuries sustained as a result of "malnutrition and spiritual neglect"; $10,000.00 against Warden Reescano for physical and emotional injuries resulting from the failure to provide adequate remedies at law; $20,000.00 jointly and severally against Spurlock and Bolton for denial of Bethany's rights; $10,000.00 jointly and severally against Reescano and Drum for their denial and neglect of Bethany's rights; costs of suit; and such other relief to which Bethany may be entitled.

Following the hearing, the Court issued a memorandum opinion and partial order of dismissal. This order concluded that Bethany's claims against Reescano, Drum, and Bolton lacked merit, but ordered Spurlock to answer the lawsuit. After the answer was filed, both parties have filed motions for summary judgment.

In her motion, Spurlock acknowledges that in September of 2007, Bethany's law library time was at the same time as Muslim inmates met for breakfast. She states that her actions in not rescheduling Bethany's law library time was in compliance with TDCJ policy as it existed at that time, but that the policy has now been changed to define "consecutive multiple-day religious observances," such as Ramadan, as "programmatic activities," thus allowing for rescheduling of law library times when they conflict with such activities.

Spurlock says that the requested injunctive relief is moot because of the policy change and that Bethany is not entitled to monetary damages under the Religious Land Use and Institutionalized Persons Act (RLUIPA). She further contends that Bethany is not entitled to compensatory damages for emotional injuries under the Prison Litigation Reform Act because he did not allege or sustain any physical injuries, and that she is entitled to qualified immunity because

2

her actions were in compliance with TDCJ policies as they existed at that time and thus were objectively reasonable as of that time. Finally, to the extent that Bethany seeks damages against her in her official capacity, Spurlock says that she is entitled to Eleventh Amendment immunity.

In his response to Spurlock's motion for summary judgment, Bethany says first that the inter-office communication attached to this motion, which sets out the policy change, is not sworn or authenticated and thus is not competent summary judgment evidence. He appears to say that the revised policy has not been implemented and so the controversy is not moot.

Next, Bethany says that Spurlock is not entitled to qualified immunity because her actions violated clearly established law, and that Spurlock did not show any legitimate penological interest in refusing to reschedule his law library session.

Bethany says that even if it is true that he cannot obtain compensatory damages, he can nonetheless receive nominal and punitive damages. He says that he intends to present evidence showing that Spurlock's behavior was "willful and arrogant against the law" and that she engaged in the same conduct in 2008. Bethany also says that the decision that inmates cannot get punitive damages under RLUIPA is "unsettled" and so objects to Spurlock's reliance upon it.

In an attached declaration, Bethany says that he suffered "unnecessary physical pain" as a result of having to miss morning meals during Ramadan. He says that even after he told the defendants that their actions violated federal law, they continued to refuse to reschedule his law library sessions, and in fact in 2008, they again forced him to choose between attending the law library or going to Ramadan observances.

In his motion for summary judgment, Bethany says that he attached to his complaint a response to a grievance saying that the defendants "as a practice and custom did not make allowances for religious purposes relevant to rescheduling law library." He says that an alternative means was already available because rescheduling exceptions were made for non-religious reasons, and that rescheduling him for a later time would not have affected prison resources because other sessions were already in place. He argues that the defendants' actions violated RLUIPA because he

was forced to either forfeit his right of access to the law library or his right to exercise the tenets of Ramadan. Bethany states that he was required to miss his morning meals and to forego the communal prayer which is part of Ramadan, and that the fact that the policy has been revised shows a concession by the Defendants that their actions were in violation of his religious rights.

## Legal Standards and Analysis

### General Standards for Summary Judgment

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Securities and Exchange Commission v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1994); General Electric Capital Corp. v. Southeastern Health Care, Inc., 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P.

To avoid summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue concerning existence of every essential component of that party's case; unsubstantiated assertions of actual dispute will not suffice. Thomas v. Price, 975 F.2d 231, 235 (5th Cir. 1992), *citing* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The Fifth Circuit has stated that once the moving party has met its burden, the nonmovant must direct the court's attention to admissible evidence in the record which demonstrates that it can satisfy a fair-minded jury that it is entitled to a verdict in its favor. ContiCommodity Services, Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

Summary judgment should be granted when the moving party presents evidence which negates any essential element of the opposing party's claim, including a showing that an essential element of the opposing party's claim is without factual support. First American Bank & Trust of Louisiana v. Texas Life Ins. Co., 10 F.3d 332, 334 (5th Cir. 1994). The granting of summary judgment is proper if the movant demonstrates that there is no genuine issue of material

fact and that the movant is entitled to judgment as a matter of law. Caldas & Sons v. Willingham, 17 F.3d 123, 126 (5th Cir. 1994). Once the movant makes this showing, the burden shifts to the non-movant to come forward with evidence sufficient to establish the existence of a genuine issue of material fact. Caldas, 17 F.3d at 126-27.

Although the Court must draw all inferences in favor of the party opposing the motion, an opposing party cannot establish a genuine issue of material fact by resting on the mere allegations of the pleadings. Hulsey v. State of Texas, 929 F.2d 168, 170 (5th Cir. 1991); *see also* Gordon v. Watson, 622 F.2d 120 (5th Cir. 1980) (litigants may not oppose summary judgment through unsworn materials). Similarly, a bald allegation of a factual dispute is insufficient, in itself, to create a genuine issue of material fact. Recile, 10 F.3d at 1097 n.15. A non-movant cannot manufacture a factual dispute by asking the Court to draw inferences contrary to the evidence. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In short, a properly supported motion for summary judgment should be granted unless the opposing party produces sufficient evidence to show that a genuine factual issue exists. Hulsey, 929 F.2d at 170, *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Application of the Standards

I. Mootness

Bethany asks for injunctive relief in his complaint, and Spurlock argues that this request is moot because the relief sought has already been granted, through the revision of the policy preventing the recurrence of such incidents. The Fifth Circuit has held that an action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome. Rocky v. King, 900 F.2d 864, 867 (5th Cir. 1990); United States Parole Commission v. Geraghty, 445 U.S. 388, 100 S.Ct. 1202 (1980).

In Sossamon v. Lone Star State of Texas, 560 F.3d 316, 325 (5th Cir. 2009), the Fifth Circuit acknowledged that voluntary cessation of an activity does not necessarily moot a case, but that it may do so where subsequent events make clear that the allegedly wrongful behavior cannot reasonably

be excepted to recur. In making this determination, the courts accord a presumption of good faith to government actors, and will assume without evidence to the contrary that formally announced changes to official governmental policy are not mere litigation posturing.

In this case, Bethany's request for injunctive relief is moot because the controversy is no longer live. *See* Gillespie v. Crawford, 858 F.2d 1101, 1102 (5th Cir. 1988) (claim for injunctive relief from prison conditions mooted by inmate's parole); Rocky, 900 F.2d at 867 (inmate's claim for injunctive relief regarding conditions of field work mooted by removal of inmate from field work); Hernandez v. Garrison, 916 F.2d 291, 293 (8th Cir. 1990) (claim seeking transfer to another facility mooted by transfer). The change in policy was formally announced and thus receives the presumption of good faith, and Bethany has offered no evidence to the contrary. Spurlock's request that Bethany's claim for injunctive relief be dismissed as moot is meritorious.

### II. Monetary Damages

Bethany also seeks an award of monetary damages against Spurlock in the amount of $20,000.00. The Fifth Circuit has held that RLUIPA does not create a private right of action for damages, and so to the extent that Bethany seeks damages under this statute, his claim is without merit. Sossamon, 560 F.3d at 327.

Spurlock also invokes qualified immunity with regard to Bethany's First Amendment claim for damages. Fifth Circuit has stated that a qualified immunity defense serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's actions were reasonable in light of then clearly existing law. Atteberry v. Nocona General Hospital, 430 F.3d 245, 253 (5th Cir. 2005), *citing* Thompson v. Upshur County, 245 F.3d 447, 456 (5th Cir. 2001). To prevail in a Section 1983 lawsuit, a plaintiff must overcome an officer's defense of qualified immunity. *See* McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, the plaintiff must satisfy a two-prong test. First, he must claim that the defendants committed a constitutional violation under law which was clearly established at the time of the incident in question, and second, that the defendant's actions were objectively unreasonable in light of that clearly established law. Atteberry, 430 F.3d at 253; Kinney v. Weaver, 367 F.3d 337, 349-50 (5th Cir. 2004). The prongs of this test are not sequential, but may be reviewed in either order. Pearson v. Callahan, 129 S.Ct. 808, 817 (2009).

In this case, Bethany has not met his burden of showing that Spurlock's actions were objectively unreasonable in light of clearly established law. The TDCJ policies at that time provided that religious activities occurring on a single day would be considered programmatic, but did not allow for observance of consecutive multiple day religious observances such as Ramadan. As Spurlock notes, her actions were in conformity with those policies. A reasonable correctional officer would have believed that following established policies complied with clearly established law. This is true even if the belief later turns out to be mistaken; the Fifth Circuit has explained that qualified immunity "gives ample room for mistaken judgments" by protecting all but "the plainly incompetent or those who knowingly violate the law." Zarnow v. City of Wichita Falls, 500 F.3d 401, 409 (5th Cir. 2007). Even if Spurlock was wrong in believing that her actions comported with the law, as Bethany contends, Bethany has not shown that her actions were unreasonable in light of clearly established law, nor that she acted in a manner which was "plainly incompetent" or that she knowingly violated the law. Thus, Spurlock is entitled to the defense of qualified immunity with regard to Bethany's claim against her for monetary damages.

### III. Emotional and Physical Damages

Bethany says, in a conclusory manner, that he suffered "severe emotional distress and mental anguish," that he was forced to endure "excessive hunger" during Ramadan, and that missing the morning meals caused him to suffer "unnecessary physical pain." The Fifth Circuit has held that conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden in a motion for summary judgment. Ramsey v. Henderson, 286 F.3d 264, 269 (5th

Cir. 2002). In Bethany's grievance concerning this incident, he makes no mention of any such hunger pangs or other physical symptoms.

Furthermore, Bethany's claim against Spurlock for these alleged injuries is based upon her actions with regard to the TDCJ policies which were in effect at that time. As such, Spurlock enjoys qualified immunity for these actions, as discussed above. Because Bethany has not shown that Spurlock acted in an objectively unreasonable manner, whether or not she was mistaken, he has failed to overcome her entitlement to qualified immunity. *See* Thomas v. City of Dallas, 175 F.3d 358, 363-64 (5th Cir. 1999).

### IV. Official-Capacity Claims

Finally, Spurlock says that she is entitled to Eleventh Amendment immunity for any claims brought against her in her official capacity. The Fifth Circuit has explained that under RLUIPA, claims for monetary relief from the State of Texas and its officers in their official capacities are barred. Sossamon, 560 F.3d at 331. Similarly, Bethany cannot seek monetary damages under Section 1983 against Spurlock in her official capacity, because such claims are barred by the Eleventh Amendment. Hafer v. Melo, 112 S.Ct. 358, 363 (1991). Spurlock's motion for summary judgment is meritorious and should be granted.

### Conclusion

The Court has carefully reviewed the pleadings, testimony, and competent summary judgment evidence in this case. Upon such review, the Court has concluded that there are no disputed issues of material fact and that the Defendant Gwendolyn Spurlock is entitled to judgment as a matter of law. It is accordingly

ORDERED that the Defendant's motion for summary judgment (docket no. 43) is hereby GRANTED. It is further

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice. Finally, it is

ORDERED that any and all motions which may be pending in this civil action, including but not limited to the Plaintiff's motion for summary judgment, are hereby DENIED.

So **ORDERED** and **SIGNED** this **30** day of **December, 2009.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE